UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARRON POULIN and LATISHA FRAZIER, Indivdually and Behalf of All Others Similarly Situtated, : **3:08-cv-01618 (CSH)** : Plaintiffs, : v. : BALISE AUTO SALES, INC., d/b/a BALISE READY CREDIT and AUTO CREDIT EXPRESS, INC., : Defendants. : | **RULING ON MOTION TO DISMISS THE COMPLAINT** |

HAIGHT, Senior District Judge:

This putative class action is brought by two Plaintiffs with poor credit who purchased motor vehicles from the first named Defendant pursuant to retail installment contracts the first Defendant subsequently assigned to the second Defendant. Plaintiffs' Complaint alleges that Defendants violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* TILA is the sole basis for this Court's subject matter jurisdiction alleged in the Complaint, which also asserts pendent claims under the laws of Connecticut.

I. BACKGROUND

The Complaint [Doc. 1] alleges that Plaintiff Sharron Poulin is a resident of Enfield, Connecticut. On February 8, 2008, Poulin went to a car dealership in Enfield owned by Defendant Balise Auto Sales, Inc., d/b/a Balise Ready Credit ("Balise"), and purchased a 1998 Saturn SL2 vehicle for a cash price of $8,440. In October 2006, Plaintiff Latisha Frazier, a resident of East Hartford, Connecticut, went to Balise's Enfield dealership and purchased a 1998 Chevrolet Venture

for a cash price of $7,995. Both Plaintiffs executed retail installment contracts which Balise subsequently assigned to Defendant Ace Credit Express, Inc. ("ACE"). Balise is alleged to operate car dealerships in Connecticut, Massachusetts and Rhode Island, marketing itself as catering to the needs of consumers with poor credit who have difficulty obtaining credit approval for the purchase of motor vehicles. ACE is alleged to operate as a sales finance company, accepting assignment from Balise of retail installment sales contract for cars Balise sold to consumers having poor credit histories. Compl., ¶¶ 4,5,10. ACE are alleged to be "closely related companies," with one James E. Balise, Jr. serving as president of both. Compl., ¶ 11.

The Complaint alleges at ¶ 12, on information and belief, that "Balise and ACE have acted in concert in selling motor vehicles pursuant to retail installment contracts at inflated cash prices to consumers who have poor credit histories." The conclusory allegation that Plaintiffs paid "inflated" prices for their vehicles is based upon the allegations that whereas Poulin paid $8,440 for her car, the car's retail value was only $3,900, according to the NADA Official Used Car Guide, Eastern Edition ("NADA Guide"); and whereas Frazier paid $7,995 for her car, its retail value according to the NADA Guide was only $4,000.

The theory of Plaintiffs' case is stated in ¶ 30 of the Complaint, which alleges that the disclosures Defendants made to them at the time of the transactions violated TILA, 15 U.S.C. § 1638, "because they mischaracterized the inflated portion of the purchase price as part of the amount financed rather than as part of the finance charge, resulting in a corresponding understatement of the annual percentage rate." Plaintiffs purport to assert this claim on their own behalf and on behalf of two classes of car purchasers: the "TILA Class," represented by Poulin, consisting of individuals who, "subsequent to the date that is one-year prior to the commencement of this action, purchased

a motor vehicle from Balise pursuant to a retail installment contract that was subsequently assigned to ACE, at a purchase price that was at least 35% greater than the NADA Retail Value for the vehicle purchased"; and the "Connecticut Class, represented by Poulin and Frazier, consisting of individuals, without regard to time limitation, who purchased motor vehicles from Balise's Enfield dealership under the same circumstances,

Defendants now move under Fed.R.Civ.P. 12(b)(6) to dismiss the Plaintiffs' TILA claim for failure to state a claim upon which relief can be granted. Anticipating the dismissal of Plaintiffs' federal claim, they also ask the Court to decline to exercise supplemental jurisdiction over the state law claims.

## II.  DISCUSSION

### A.  Standard of Review

As in all motions to dismiss a complaint under Rule 12(b)(6) for failure to state a claim, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. But this is not a case which turns upon the resolution of disputed facts. The core facts are undisputed. So the standard of review is not so much to decide whether Plaintiffs have alleged facts sufficient "to state a claim for relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009), as it is to "assess the legal feasibility of the complaint," *Eternity Global Master Fund, Ltd. v. Morgan Guaranty Trust Co. of New York,* 375 F.3d 168, 177 (2d Cir. 2004) (citation and internal quotation marks omitted). In the case at bar, the question is whether Defendants' conduct violates the statutory scheme and purposes of TILA.

### B.  TILA

As Judge Dorsey of this Court observed in *Frazee v. Seaview Toyota Pontiac, Inc.*, 695

F.Supp. 1406, 1407 (1988): "The primary purpose of TILA is to promote the informed use of credit." In enacting TILA, Congress found that "[t]he informed use of credit results from an awareness of the cost thereof by consumers." 15 U.S.C. § 1601. "The Act requires creditors to disclose credit terms in a uniform manner and by requiring all additional mandatory charges to be included in the computation of the finance charge, the consumer is given the information needed to compare the cost of credit and make an informed buying decision." *Frazee*, 695 F.Supp. at 1407-08 (citing *Mourning v, Family Publications Serv.*, 411 U.S. 356, 364 (1972)). More recently, the Supreme Court said of TILA: "The declared purpose of the Act is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1604(a) and citing *Mourning*). To further that purpose, "the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id*. (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). TILA is a disclosure statute and does not "substantively regulate consumer credit." *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001).

In the busy world of car financing, "automobile dealers and other creditors shall be held liable for violating the TILA only for defects that are apparent on the face of the disclosure statement." *Williams v. Lynch Ford, Inc.*, No. 03 C 5830, 2004 WL 2997508 (N.D.Ill. Dec. 23, 2004) (citation and internal quotation marks omitted). *Accord Frazee*, 695 F.Supp. at 1408 (no viable claim under TILA existed where "plaintiff entered into a retail installment contract that plainly disclosed finance charges of over $1300 (11.9% A.P.R.; 42 month term" and "[d]efendant complied

with the disclosure requirements of TILA.").

**C.    Plaintiffs' Claims**

In the case at bar, Defendants accurately point out in their Main Brief at 8 that Plaintiffs' Complaint contains "no allegations that there are any errors or defects in the disclosure of the required terms of the contract," or a claim that Defendants "have misstated, miscalculated, or failed to [sic] the interest rate, amount financed, amount of monthly payment, down payment or other financial terms and conditions that were agreed to by the plaintiffs," or an allegation that Defendants "failed to clearly and conspicuously disclose the essential terms of the transaction or that the timing of the disclosures violated TILA."

Instead, Plaintiffs' claim that Defendants violated TILA is premised entirely upon the allegations in ¶ 8 of the Complaint that Defendants sold consumers with poor credit histories, such as Plaintiffs, "older motor vehicles at inflated prices"; ¶ 9, that those inflated prices are "hidden finance charges"; and ¶ 30, that Defendants, in violation of TILA, "mischaracterized the inflated portion of the purchase price as part of the itemization of the amount financed rather than as a part of the finance charge, resulting in a corresponding understatement of the annual percentage rate."[1] The only facts pleaded to support these conclusory allegations of "inflated prices" and "hidden finance charges" are Plaintiffs' payments of amounts for their cars greater than the retail values listed for them in the NADA Guide.

---

[1] Plaintiffs restate their claim in somewhat different language in their Brief at 4: "The thrust of this claim [in ¶ 30] is that Balise charged Poulin and the class members a higher cash price for the vehicles relative to the cash price for vehicles sold to cash purchasers with good credit and that the excess portion of the cash price is a hidden finance charge." The present motion to dismiss turns upon the claim as pleaded in the Plaintiffs' Complaint, not as it is restated in their Brief.

**D.     The Statutory and Regulatory Scheme**

In TILA, Congress delegated to the Board of Governors of the Federal Reserve Board the power to "prescribe regulations to carry out the purposes" of the statute. 15 U.S.C. § 1604(a). "Congress was clearly aware that merchants could evade the reporting requirements of the Act by concealing credit charges. In delegating rulemaking authority to the Board, Congress emphasized the Board's authority to prevent such evasion." *Mourning*, 411 U.S. at 371. The Board has promulgated Regulations implementing TILA, accompanied by Official Staff Commentaries clarifying or amplifying the Regulations.[2]

In *Mourning*, the Supreme Court noted that one means of circumventing TILA's objectives was by "'burying' the cost of credit in the price of goods sold." 411 U.S. at 366. The Board promulgated Regulation Z, 12 C.F.R. § 226, to block that and related non-disclosure practices. The Official Staff Commentaries also serve to inform creditors about conduct which would not violate the statute. *See* Supplement I.1 to Part 226 ("This commentary is the vehicle by which the staff of the Dvision of Consumer and Community Affairs of the Federal Reserve Board issues official staff interpretations of Regulation Z. Good faith compliance with this commentary affords protection from liability" under TILA).

Regulation Z begins with definitions. I quote in pertinent part those definitions most relevant to the case at bar.

"Consumer means a cardholder or natural person to who credit is offered or extended . . ." 12 C.F.R. § 226.2(a)(11).

---

[2] The Official Staff's pronouncements are printed in Supplement I to 12 C.F.R. Paert 226 under the caption "Official Staff Interpretations." But the Staff itself refers to its output as "commentaries," and counsel use that term in their briefs, as do I in this opinion.

"Creditor means: A person who regularly extends consumer credit that is subject to a finance charge . . . " *Id.*, § 226.2(17)(i).

"Cash price means the price at which a creditor, in the ordinary course of business, offers to sell for cash property or service that is the subject of the transaction. . . . The term does not include any finance charge." *Id.*, § 226.2(9).

It will be observed that the regulatory scheme draws a distinction between "cash price" and "finance charge." Regulation Z deals with finance charges in 12 C.F.R. § 226.4. § 226.4(a) defines "finance charge" as follows:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge *payable directly or indirectly by the consumer* and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

(emphasis added). The Official Staff Commentary states in Part 226, Supp. I.2:

> Costs of doing business. Charges absorbed by the creditor as a cost of doing business are not finance charges, even though the creditor may take such costs into consideration in determining the interest rate to be charged or the cash price of the property or service sold. However, if the creditor *separately imposes a charge on the consumer* to cover certain costs, the charge is a finance charge if it otherwise meets the definition. For example:
>
> i. A discount imposed on a credit obligation when it is assigned by a seller-creditor to another party is not a finance charge as long as the discount is not *separately imposed on the consumer*.

(emphasis added). For that proposition the Staff Commentary references § 226.4(b)(6) of Regulation Z, which provides that examples of finance charges include:

> Charges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, *if the consumer is required to pay the charges* in cash, or as a deduction from the proceeds of the

7

>obligation.

(emphasis added).

**E.     This Case**

Under the statutory and regulatory scheme, it may be stated generally that a finance charge is a charge imposed in a credit transaction which is not imposed in a cash transaction. TILA requires the disclosure of both the price and the finance charges. In *Mourning*, 411 U.S. at 368, the Court quoted the words of Senator Douglas, a proponent of the statute: "Both things are to be stated, price and finance charges, and the judgment of the consumer can be on the basis of both of these factors."

The specific implementation of these generalized propositions is spelled out in the Federal Reserve Board Regulations, particularly Regulation Z and its accompanying Official Staff Commentaries, quoted in Part II.D, *supra*. They make it apparent that not all fiscal components of a credit transaction constitute "finance charges," Some do, some do not. The *leitmotiv* running through Regulation Z and its Commentary is that to qualify as a "finance charge," a particular charge must be payable by the consumer, directly or indirectly, separately imposed by the creditor on the consumer, and which the transaction consequently requires the consumer to pay.

Plaintiffs' complaint fails to state a viable TILA claim because it does not allege or describe the existence of a separately imposed charge payable by them in connection with these credit transactions. Stripped of conclusory verbiage, Plaintiffs' claim is that they paid more for their financed vehicles than the retail values listed for them in the NADA Guide, and that excess amount should be characterized as a hidden finance charge. This theory does not fit within TILA's statutory and regulatory scheme, and is contrary to the spirit, if not the letter, of § Supp.I.2(i) of the

Commentary.  Plaintiffs' construction of TILA would cause the statute to substantively regulate consumer credit, which is not the statute's purpose.

While the Second Circuit does not appear to have squarely addressed the concept of TILA finance charges, Plaintiffs' focus upon the difference between the prices they paid and retail values such as those published in the NADA Guide has not found favor with courts in this district.  *See Frazee*, 695 F.Supp. at 1408 (plaintiff's claim "is not actionable under TILA.  Any differential between the fair value of the car and its cash price is attributable to a bad bargain, or perhaps a violation of the bargain in the sale of the car, and not any hidden finance charges."); *Ringenback v. Crabtree Cadillac-Oldsmobile, Inc.*, 99 F.Supp.2d 199, 203 (D. Conn. 2000) (Chatigny, *J.*) ("The court is unable to discern from the record whether the transaction violates TILA.  First, the only evidence concerning the true market value of the 1966 Oldsmobile before the court is the N.A.D.A. figure.  This is not an adequate substitute for proof of the true market value of the car.").

The cases in this circuit Plaintiffs cite are inapposite because they involved publicly advertised or privately agreed cash prices which the seller subsequently increased.  *See, e.g., Orosco v. Partyka Chevrolet, Inc.*, Civil No. N-89-606 (D. Conn. July 18, 1990) (Cabranes, *J.*) (denying cross motions for summary judgment where it was undisputed that "the sticker price was $10,129 and that the price charged plaintiff for the vehicle was $800 higher than the sticker price.  Plaintiff claims that he negotiated to purchase the car at sticker price and that the $800 surcharge appeared for the first time in the purchase agreement.  He alleges that the $800 was, as a matter of law, a hidden 'finance charge' in violation of TILA.") (slip op. at 3); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F.Supp.2d 519, 524, 529-30 (E.D.N.Y. 2006) (granting plaintiff's motion as to defendant dealer's liability under TILA where plaintiff told the defendant dealer's salesman that he wished to

purchase a used vehicle "advertised in the New York *Daily News* on May 8, 2003 for sale at a purchase price of $13,495," subsequently "paid $16,590 instead of the advertised $13,494," and claimed that " the price charged to him in excess of the advertised price was based on the need to obtain sub-prime financing and thus was a finance charge in violation of TILA"because not disclosed by the dealer.  Such cases are distinguishable from the case at bar because Plaintiffs' Complaint nowhere alleges that a price lower than what they paid for their vehicles had been previously agreed or publicly advertised.

TILA delegated to the Federal Reserve Board the authority to promulgate regulations implementing the statute's purposes and policies.  I conclude that the plain meaning of Regulation Z and its accompanying Official Staff Commentaries exempts defendants' conduct from characterization as a "finance charge" under the statutory and regulatory scheme.  If cases decided in other circuits take a different view, I am not bound by them and decline to follow them.

Accordingly, defendants' motion for summary judgment dismissing Plaintiffs' claims based upon TILA is GRANTED.  The Clerk is directed to enter judgment for both Defendants dismissing Plaintiffs' TILA claims with prejudice.

The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(a),(c)(3); *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.") (citation and internal quotation marks omitted).  The Clerk is directed to enter an order dismissing Plaintiffs' state law claims without prejudice.

   The Clerk is further directed to close the case.

   It is SO ORDERED.

Dated: New Haven, Connecticut
   April 5, 2010

                */s/ Charles S. Haight, Jr.*
                CHARLES S. HAIGHT, JR.
                SENIOR UNITED STATES DISTRICT JUDGE